22-1075 and 24-1520 in the Matter of the Application of Isabella Hranoff. Mr. Ryback, whenever you're ready. Thank you, Your Honor. May it please the Court, Stuart Ryback from Los Alamos for the appellant, Dr. Isabella Hranoff. One issue I'd just like to get out of the way up front. Had I been advised of the stay in Germany at the time of the brief, we would have had a footnote on page one about it. Obviously, it's not helpful to us to have that become a subject of a motion litigation, but it is what it is. The point is, it's now February 12th, the stay's over the middle of June. It's unlikely to have much effect on proceedings here in New York, and the only other comment I'll make about this is the client expects a complete exoneration at the conclusion of the prosecution's investigation in Germany, and if they're right about that, then any consideration of the criminal case that Deutsche Bank commenced would be an injustice here. Moving over to substance. Hold on. Before you move on. Yes. Yes. So, there's two German cases. The civil one that's sort of directly at issue here is stayed since June, you said? Yes. And there's been no change in status there? That's what needs to be said pending the criminal case. It's a stay to allow factual development in the criminal matter. Prosecutors have greater ability to discover facts than civil litigants do, and it's not uncommon in the German system, when there is an overlapping set of facts between a criminal case and a civil case, for the civil court to just say, we're going to hold this in abeyance, see what comes back from the prosecutors, and we'll have more facts. That stay can last a year, and then it expires after a year. Well, if we request it to expire after a year, it'll expire after a year, and we intend to request that. Okay. And so, what's the status of, then, the criminal proceeding? I understand that's been going on for several years now. Well, the prosecutors are doing their work, and whenever they get back, they get back. My clients are gone. Can you do a little bit better than that? What's the last sort of development that you've heard of, or where are you in the proceeding? I have no special insight about this. I know that they've been, they issued a search warrant, and they took computers, and my clients didn't have much problem with, well, obviously, they would rather not be on the receiving end of a criminal investigation, but they're quite confident nothing's going to be found. And so far as I know, the prosecutors are doing whatever it is the prosecutors do. I have no special insight into that.  Go ahead. Okay. On the first intel factor, the lower court got this one wrong for two main reasons. The first is jurisdiction. The second one is failure of proof. This is key because a discretionary decision without factual support is an abuse of discretion. Before I get to that, the first ground for the district court's decision was that the target of the 1782 is the adversary abroad. By itself, that's not a reason to deny the application. We have a whole list of cases, six different circuits, pages 49 and 50 of our brief that approved 1782s to the adversary. So that by itself is not a basis to deny. Intel says that the rationale for the first factor is that there's less need for 1782 when the subpoena goes to the adversary because the subpoena documents may be within the home court's jurisdictional reach. The German court's jurisdictional rules don't allow it to require production of documents kept outside of Germany. And we know that the bulk of the requested documents, those from Boehner and those from Setty, are kept outside of Germany. Do they require exchange of documents that are in Germany? They do not. It's a completely different system. Well, I remember from generations ago when I practiced law that you'd go to an English court or a continental court. You say to a lawyer there, what about discovery? And by discovery, they mean very little, unlike ours, which goes on with depositions and disclosure of papers. And so it's a very, very different, they use the same word in a different way. Well, there's, Intel actually at the end of footnote 12 in the case observes that in civil law countries there's no ability to require production of documents. It's a very different system. But under German rules, if documents are kept outside the country, it's not an issue within personam jurisdiction over one of the parties. You also have to have the ability to reach the documents in Germany, and Deutsche Bank's documents are outside of Germany. Deutsche Bank has danced around this issue. It has focused on the fact that it's subject to personal jurisdiction in Germany and can be compelled to produce documents, generally. I thought Deutsche Bank did produce some documents relating to the disputed e-mail that were not from Germany. I'm sorry? I thought Deutsche Bank did produce some e-mails that were relating to the e-mail, the disputed e-mail, that were not from Germany. No. That's incorrect. No. No. Deutsche Bank has not identified, there's a conclusion in Mr. Schmitt's declaration that says we've produced most of the documents and whatever, and there's documents that are also subject to the requests. Now I'm going to date myself, but my question is where's the beef? They didn't identify a single document in the German case that would have been responsive to one of the subpoena requests. The subpoena requests all seek internal documentation from Deutsche Bank. They didn't identify a single one in their papers. So where's the beef? And they also didn't show any overlap. If you look at footnote 15 of our brief, we explained in detail how the requests that we have in Germany do not overlap or are not duplicative of the requests that we have in the subpoena, and they never responded to that. But on the jurisdiction point, Deutsche Bank has been dancing around this, and I really suggest Mr. Dorchak should be asked directly whether Deutsche Bank's position is that the German court can compel production of documents kept outside Germany. So what we ended up with here is complete failure of proof on the issue. So just so I understand your argument, it's that Deutsche Bank in Germany, in the German proceeding, cannot produce the documents that you've requested because why? They can't be required to. The court does not have the authority to require? Right, because they're kept outside Germany, and there's also a practical inability to frame a request. Is that what the court said there? Did you make the request there, and the court said, we can't, we don't have the authority? No, the jurisdictional rules don't allow it. And the request that we made here.  For you to make the request that you're making here? It would be an exercise in futility. The other thing is under 142 and 421 of the German Civil Code, if you do make a request that the court require a document to be turned over, it has to be requested in extreme detail, so you have to know exactly what you're asking for. If you look at our subpoena requests, they are regular Rule 26, Rule 34 requests. They ask for categories of documents. There is nothing like that that's cognizable under German civil procedure. There's just no comparable procedure there. So what happened here is Deutsche Bank's complete factual submission on this issue is a conclusion with no evidence behind it. Isn't that what the first intel factor sort of accounts for, though, that Deutsche Bank is a party there and you don't get to go on a fishing expedition in another jurisdiction to get documents that you're not legally allowed to get in the one you're in? That's actually not what the case law is. The case law is that the discovery has to be fairly available in the home jurisdiction, even if it's the adversary abroad that the subpoena is being served on, and there's lots and lots of case law about this. It's been said directly that Germany does not provide that sort of opportunity. The Seventh Circuit said so in Jerez. The Third Circuit said so in Esken. We have cases from the Southern District of New York that's been at length on that score, Northern District of California, directly about Germany, and in terms of the availability of evidence, you have to have some comparable way of getting evidence out of the home court. That's why in Fraser's you can get documents in England, and there was an agreement by the respondent that they would produce in England without objection that the documents are kept outside of England, but you can do that in an English court. You can't do that in a German court because there's absolutely no way to formulate a request without already knowing what you're asking for. Okay. Thanks, Mr. Rivai. Okay. Thank you. I have a couple of things for you. Mr. Dorchek. Good morning. You may please the court. Joshua Dorchek of Morgan Lewis & Bakke, SLLP, for the Deutsche Bank entities that are the appellees in this matter. I'd like to start just by addressing this issue of what's in Germany and what's available in Germany. The servers where Deutsche Bank AG's archives are stored are located in Germany and England with respect to European operations, and in California and Nevada, not New York, with respect to U.S. operations. What we call the investigation into the disputed document that was conducted in Europe by Deutsche Bank personnel who were overseen by Margaret Dolson, the person in New York, that search involved both the European and the U.S. servers, and the documents that were produced were from both. So it is true that Deutsche Bank has already voluntarily produced documents to the German court that came from sources outside of Germany. As far as the other pending requests in Germany that we argue overlap, to say that we haven't clarified what's going on is incorrect. We have JA 507 as the Deutsche Bank's German lawyer's chart of the pending requests in the German proceeding that don't overlap 100 percent but do overlap with the documents sought here. I understand Mr. Rebeck's argument to be that they cannot get the materials that they've requested because of the nature of the discovery rules and the authority of the German court there. What's your response to that? I don't believe that it is accurate to say that the German court can't order Deutsche Bank AG, which has access to every document in its archives worldwide by virtue of being in charge of the Deutsche Bank AG operation worldwide. I don't believe that the court in Germany cannot order them to get whatever documents that court sees fit to order them to get. So if the court ordered to produce in Germany, or if you're right about the legal authority to do that, ordered Deutsche Bank to produce the documents in Germany, you would not interpose the objection that you can't produce them because they're in New York. Is that what you're saying? The Deutsche Bank has never protested any request from the German court to produce documents in connection with this dispute. Deutsche Bank voluntarily went and did this elaborate review of all of its records just to prove that the document that Deutsche Bank has in its records 88 times is the real document. And Deutsche Bank had Du Bois independently. Well, that was an offensive. I mean, that was a production where you had something to prove. That was defensive. I think your friend is complaining about the things that they want. Right. I don't even want to talk about any of this stuff because I don't think we need to talk about the intel factors for DBAG at all. I think the one question that we need to ask, and we can answer essentially this entire dispute with, is the causation question from Del Valle, which is what actually controls the issue of jurisdiction in the first place over DBAG. And you have to ask the question twice, but each time you ask it, you get the same answer. The question is, is that even assuming that it's purposeful availment of New York for Deutsche Bank to have a head of e-discovery and a head of equities trading in New York, let's just assume, we disagree, but let's assume that that is purposeful availment. For the jurisdiction to lie over Deutsche Bank AG, it must be true that Deutsche Bank having those people in New York is the but-for cause of all these documents that they're seeking being available at all. That's what Del Valle says. That's what this court has established as the standard. And that's being favorable to the applicant because you may have noticed in our brief, we pointed out that Deutsche Bank has took the position below that Deutsche Bank is subject to liability in the German court and therefore should be subject to a narrow version of causation, the one that says that the connections to New York have to give rise to the episode in suit in Germany. And nobody thinks that Septi being in New York or Dolson being in New York is why there's a dispute in Germany over a bunch of equities trading. Well, if Septi was overseeing Hranov's accounts from New York, why wouldn't that be enough for a specific jurisdiction? It is not in the record that Septi was overseeing Hranov's accounts or having any degree of interaction with Mr. Hranov and Mr. Biner. What we have is an email from Biner to his colleague in England, Mr. Connors, I think his name is, that copies Mr. Septi, who's in New York. And I'm not denying that he's the head of equities trading and that I'm not denying that he was at least based in New York. By the way, there's no record to say that he was in New York when he got this email. There's no record about how much time he spent in New York. But OK, he was based in New York and he was cc'd on a document between two guys in Europe. Everything else is speculation by applicants' counsel that Septi had to be in New York, he had to be connected to the markets, he had to be involved with Mr. Biner. They're just saying that. And I can prove that Mr. Septi didn't need to be in New York because 35 days after the date of this disputed document, Mr. Septi moved to Hong Kong. He kept his job, he kept his position, he's still in charge of equities trading for Deutsche Bank globally. And now he's in Hong Kong. So it can't be true that he had to be in New York to be the head of equities. In any event, him being in New York cannot be the but-for cause of 15 years' worth of global equities trading documents being available. Those documents are available because Deutsche Bank archives all of its documents as soon as they're created. That's why they're available. Septi being in New York doesn't change any of that. So they'd be available for production in Germany if the court there? Absolutely. They're just as available now as they would have been if Septi had been based in Peru. Can I ask you about the status of the underlying litigation in Germany as well as the criminal case? Do you have anything to update the court on there? I don't have an update as of overnight e-mails from my client and their German counsel. There's been nothing further that they can report since the June 11th order that was when our motion was granted was added to the record. And the main thing I'd say about that order is that it now creates to me an argument for the third intel factor flipping against production. Now, the district court didn't have that fact in front of them. But to me, the suspension of all activity by the German judge, that's a good basis to think that maybe the German court wouldn't be happy about the district court here providing documents to the litigant who's not supposed to be litigating. Can I just ask you, so at this point, though, how much or what has been turned over or how many documents have been turned over in the German civil litigation? Like, there, I guess, is a dispute as to what the German court could or could not order between you and your adversary. And I'm just wondering, has, you know, prior to the freeze, what has been turned over? What's, is there, I don't know if that's an easy question to answer, but. I don't know is the answer that I have to give you, Robert. I appreciate that. The documents that were turned over were with respect to this dispute about the authenticity of the documents. They weren't generally discovery in connection with the dispute, with the actual dispute between the parties. Because, by the way, this Dolson search and this investigation. But is that, I'm sorry, if I could just. Is that because it hasn't gotten to that point or the requests haven't been made or that's what I'm trying to figure out? The focus has been on the document. The document being in dispute has triggered more discovery activity than is typical in a German civil proceeding, as I understand it. There's a very unique circumstance. I am not saying that if we wait long enough and the case goes forward in Germany, that eventually the applicant can get whatever she wants in Germany. I'm not saying that. It is true that the scope of discovery is narrower in Germany than it is here. And I've never argued differently. What I'm trying to say is that there is no per se rule that says the intel factor number one flips in favor of the applicant if it's simply true that in the foreign jurisdiction discovery is narrower than it is here. Those intel factors are for consideration. They are not absolutes of any sort. It's the applicant that acts like, well, Germany doesn't have discovery, so, you know, I can get it here. It's not that simple. The judge is supposed to weigh the four factors, including the overbreadth of number four, including the fact that there's overlap with the documentation that's going on. But there's no requirement. There's no rule that says we have to give them anything they can't get in the other jurisdiction. It's discretionary. And we've seen. Sorry to interrupt. Your time is running out. The civil case has stayed pending the criminal investigation. So, in any event, whether there would be discovery here in New York or not, it could not be used in the civil case right now. Is that true? I guess it couldn't be used in the civil case. Because I'm not sure there's nothing going on there. I'm not sure what use the applicant could make of the documents while we're waiting to see whether the case goes forward. That's what I'm saying. And it's possible, then, that pending the criminal results of the criminal investigation, well, do the court in the civil case in Germany say what it would do after the stay or when the stay would end? No. I don't believe the court said what comes next if there's a finding of forgery or if there's not a finding of forgery. I'm not trying to get there. I'm not trying to ask this court to decide that anybody did anything wrong. Well, I guess where I'm going with this is does it make sense for us to wait while the German case is waiting on the criminal investigation? I have already answered that, Your Honor. If there's jurisdiction over Deutsche Bank AG and if the intel factors for DBTC favor the application, even though DBTC is being used as a proxy. Yeah, I understand that. But from our point of view, we don't have to decide those things.  If you want to overlook all of that, then yes, of course we should wait. The worst case scenario here should be we wait and see what happens. Because the God forbid scenario for my client, which I hope you'll sympathize with, is that we don't want to turn over 15 years' worth of sensitive documents to a person that we believe may have already manipulated our documents and disseminated them on the dark web for their own personal evil gains. Now, I'm not saying that happened. We'll see if – we may never know if that happened. But the point is what's the prejudice even if all the law goes against us? What is the prejudice of waiting to make sure we're not handing off documents to someone who shouldn't be getting them? This isn't – again, I come back to this. I don't need discretion if I'm right about the jurisdiction. But when it comes to discretion, it should be real broad discretion. And that's what Judge Castell did. He waited everything that was going on. And I don't think anybody can say he was oblivious to the factors. And we tried to get him to take our side on three factors, and he rejected factors that we, in addition to Intel, proposed. I think we have your argument, counsel. You're of your time, so we'll hear a rebuttal. Thank you. Thank you. Just a couple of brief things. We didn't ask for 15 years of documents. But the stay ends in June. It's four months from now. So I don't know. Do you have any objection for us to us waiting to decide these issues, pending that stay? Because this may well go away. Well, let me back up. You agree that even if you were to win and get access to the documents, you could not currently use them in a foreign proceeding. Is that true? Not if it happened within the next four months. That's correct. Right. The other thing is on causation. What my adversary is arguing is that you have to show there's something uniquely New Yorkish about the contact and the way that it caused the documents to come into being in order to have causation. And that's not what Del Valle says. The rule isn't that you need something unique to it. It's simply that the contact with New Yorker would cause the availability. And as for Septi's document, if Septi's name isn't on it, it's a different document. It's because it was cc'd to Septi that that document exists. And in terms of Dolson, nobody had the ability to get to those documents until she and her team started doing the work. It may well be the case, with only Deutsche Bank's word to take for it, that most of the team was in Europe, but then they also could have had somebody in Europe supervising it. They chose to use somebody who was located in New York and use that person as the witness in the German litigation. So, yes, there is direct causation. And finally, I just want to stress, if you look at the discussions of the German legal system and the way that German orders relating to documents work, from the Seventh Circuit, from the Third Circuit, from other courts around the country, they all say, discovery by asking for categories of documents does not exist in Germany. That actually, Judge Sullivan said that when he was a district court judge. I don't want to go over time, so thank you, Your Honors. Thank you, counsel. Thank you both. We'll take the case under advisement.